COMPAÑÍA POPULAR DE TRANSPORTE, INC., Plaintiff and Appellant, *v.* UNIÓN DE EMPLEADOS DE TRANSPORTE ET AL., Defendants and Appellees.

No. 9553. Argued June 23, 1948.—Decided July 19, 1948.

*Santos P. Amadeo* and *Artemio P. Rodríguez* for appellant. *Ramón Cancio* and *Pedro Santana*, counsel for the Department of Labor, for appellees. *E. T. Fiddler, José G. González, Tomás I. Nido*, and *Mariano Canales; James A. Beverley, R. Castro Fernández*, and *José López Baralt; Charles R. Hartzell, Rafael O. Fernández*, and *José L. Novas*, and *Gabriel de la Haba*, as *amici curiae*.

MR. JUSTICE SNYDER delivered the opinion of the Court.

### ON RECONSIDERATION

The plaintiff company is a public utility engaged in the business of transporting passengers for compensation. It filed suit against certain of its employees and their Union for a declaratory judgment to resolve the disputes between it and these employees as to whether and in what amounts the company was required to compensate the employees for a day of rest under Act No. 289, Laws of Puerto Rico, 1946. The company has appealed from the judgment of the district court.

### I

The first assignment is that the lower court erred in holding that pursuant to Act No. 289 the company must pay its employees compensation for the day of rest established by the Act, even though they do not work on that day. This error will be better understood if we examine the history of our statutes providing for a day of rest.

The Legislature has provided since 1902 that commercial and industrial establishments shall remain closed on Sundays and at certain other times. Section 553 Penal Code, 1937 ed. For the various changes in this statute, see Penal Code of 1902, § 553; Act No. 131, Laws of Puerto Rico, 1913, Special Session; Act No. 24, Laws of Puerto Rico, 1914; Act No. 26, Laws of Puerto Rico, 1917, Special Session, Vol II; Act No. 3, Laws of Puerto Rico, 1918; Act No. 18, Laws of

Puerto Rico, 1925; Act No. 54, Laws of Puerto Rico, 1930; Act No. 110, Laws of Puerto Rico, 1937; Act No. 306, Laws of Puerto Rico, 1938; Act No. 3, Laws of Puerto Rico, 1947, Fifth Special Session.

The Closing Law has always exempted from its provisions a number of industries, including public utilities, which as a matter of public necessity are permitted to remain open continuously. But in view of the fact that some or all of the employees in those exempted industries could be required to work on Sundays, the Legislature, beginning with Act No. 26 of 1917, provided in the aforesaid statutes that in these exempted industries employees "who render services on the basis of an annual, monthly or weekly salary, or in any form other than for wages or piece work at a fixed price, shall be entitled to one day of rest for every six days of work at full salary." See *Parrondo* v. *L. Rodríguez & Co.*, 64 P.R.R. 418, for the history of these statutes.

Although the provision for a day of rest for employees in exempted industries was in effect from 1917, apparently no litigation arose thereunder until *Compañía Popular* v. *District Court*, 63 P.R.R. 116. In that case an employee of the public utility involved herein had contracted to work seven days a week for a weekly salary. We held that, despite this contract, the employee was entitled to additional pay for working on the seventh day. We reached this result on the ground of public policy as set forth in § 4 of the Civil Code and to avoid unjust enrichment of the employer.

The next step came in *Compañía Popular* v. *District Court*, 64 P.R.R. 365. This opinion involved a subsequent incident of the case reported in 63 P.R.R. 116. Here we held that under the aforesaid statutes only employees who were paid annual, monthly or weekly salaries were covered by the statutes, and that employees who were paid hourly or daily wages were not included therein.

Finally, this provision of law, as embodied in § 3 of Act No. 26, Laws of Puerto Rico, 1917, Special Session, Vol. II,

was held invalid because the subject matter of § 3 was not covered by the title of the statute as required by § 34 of the Organic Act. *Laboy* v. *Corporación Azucarera, etc.*, 65 P.R.R. 397.

The Legislature then enacted Act No. 289, Laws of Puerto Rico, 1946, which reads in part as follows:

"Section 1.—All employees of any commercial or industrial establishment, enterprise, or lucrative business not subject to the provisions of Section 553 of the Penal Code of Puerto Rico, as subsequently amended, relative to the closing to the public, shall be entitled to one day of rest for every six (6) working days.

"For the purposes of this Act, one day of rest shall be understood as a period of twenty-four (24) consecutive hours.

"Section 2.—The provisions of this Act shall not be applicable to occasional or piece work.

"Section 3.—No employer shall deduct any sum from the salary of any employee for the day of rest established by this Act.

"Section 4.—Any employer who employs or permits an employee to work on the day of rest established by this Act, shall be obliged to pay said employee for the hours worked during such day of rest a rate double the salary rate agreed upon for regular working hours.

"Section 5.—For the purposes of this Act, employee shall be understood to mean any employee, laborer, clerk, workman, day laborer or person who works for an employer for a salary, wage, or any other compensation."

Act No. 289 was enacted not only to cure the defective title of the previous statute, but also to broaden its provisions to include daily and hourly wage-earners. But the Legislature did not leave intact the provision that employees to whom it applied "shall be entitled to one day of rest for every six days of work, at full salary." The Legislature struck out the phrase "at full salary". The statute therefore now provides only for one day of rest for six days of work.

The conclusion is inescapable that the Legislature gave daily and hourly employees in industries exempt from the Closing Law the same privileges employees have in industries which are required to close on Sunday. Employers in the latter category are compelled to give their daily and hourly employees a day of rest on Sunday; but the latter receive only the pay they earn on the six days they work. *Parrondo* v. *L. Rodríguez & Co., supra,* p. 428. Employees in exempted industries may or may not work on Sunday, depending on the requirements of their particular employers. But whether or not they work on Sunday, under Act No. 289 they are entitled to a day of rest—either Sunday or some other day—after six days of work. However, just as in the case of employees in non-exempt industries who rest on Sunday but receive no additional pay therefor, Act No. 289 provides a day of rest for daily and hourly employees in exempted industries without additional pay for the day of rest.

The district court held that the defendants were entitled to a day of rest with pay. It is difficult to believe that the Legislature intended to discriminate in this manner against industries which because of public necessity are permitted to operate on Sundays. This is particularly true where as here some or all the employees in fact take their day of rest on Sunday in the same way as employees do in ordinary industries. To so hold would be to say that under the guise of granting a privilege the Legislature was imposing a penalty, even when the alleged privilege was not exercised. If Act No. 289 so provided specifically, we would have no choice but to enforce it, provided it was constitutional. But we are not compelled to read into the statute words which are not there in order to reach an inequitable result which the Legislature did not intend.

Section 4 reinforces this interpretation of § 1 of Act No. 289. It provides that if an employee works on his day of rest, he shall receive double pay at the rate for regular work-

ing hours. This is premium, penalty or overtime pay exactly like that found in minimum wage and maximum hours statutes and decrees. Double pay is provided only for overtime work, the higher rate being designed to discourage overtime work. But if no work is done beyond the regular working hours, there is no pay for time not worked. And a seven-day week is discouraged, although not prohibited, by providing for (1) a day of rest without pay after six days of work and (2) double pay if work is required on the day of rest.

The net effect is that Act No. 289 establishes a normal six-day work week for exempted industries in order to equalize conditions in the latter with those obtaining in ordinary industries. In both types of industry work must stop at a certain point—after a six-day week. A nonexempt industry cannot be operated on Sunday. If an exempted employer chooses to exercise his privilege to work seven days a week, he must pay double the regular rate for the seventh day. But if he operates on a six-day week basis, he is in exactly the same position as employers in ordinary industries.

To hold that under § 1 an employee receives pay for the seventh day without working would be to thwart the intention of the Legislature expressed in § 4 that work on the seventh day should be paid for at double the regular rate. That is to say, under this interpretation, an employee who works on the seventh day would receive only ordinary pay in addition to the ordinary pay he was already entitled to receive without working. And, as a consequence, employers in exempt industries would be driven to a seven-day or a five-day week, whereas the Legislature intended by Act No. 289 to encourage the establishment of a normal six-day week even for exempted industries. It therefore seems clear from §§ 1 and 4 that the employee is entitled to a day of rest without pay.

This view is in accord with the title of Act No. 289. The title does not say that the Act provides for a day of rest with pay. Instead it recites that it is an Act "To fix one day

of rest for each six (6) working days . . .; To provide that all hours worked during such day of rest shall be paid for at a rate double the salary rate agreed upon for regular working hours . ...".

It is unlikely that the contention that Act No. 289 provided for a day of rest with pay would have ever been pressed if the statutes which preceded it had not provided for a day of rest "at full salary". It is perhaps enough to dispose of this argument simply to point out that the phrase "at full salary" was omitted from Act No. 289, without inquiring into the motive of the Legislature in making this change in the Act. But we think it appropriate to spell out, if we can, the purpose of the Legislature in eliminating this provision from the Act. The previous statutes covered only employees who received annual, monthly or weekly salaries. When enacting those statutes, the Legislature perhaps envisioned the possibility that their purpose might be defeated in part through reduction of such salaries by employers who operated on a seven-day week basis. It therefore provided that such employees must receive a day of rest "at full salary". But when these statutes were broadened by Act No. 289 to include daily or hourly wage-earners, this phrase was dropped. The Legislature may have thought that the phrase was no longer appropriate as hourly or daily employees are not paid a salary, irrespective of the time worked; they are paid what they earn by working a certain number of hours or days.

However, when it passed Act No. 289 the Legislature did not lose sight of the fact that it was still necessary to protect employees with annual, monthly or weekly salaries. Section 3 was designed principally to safeguard such employees against possible attempts to reduce their salaries in view of the requirement that they be given a day of rest. Viewed in this light, §3 is somewhat analogous to the provision of the former statutes which applied only to employees earning annual, monthly or weekly salaries and which provided that they shall receive their day of rest "at full salary".

Both the earlier statutes and § 3 were designed to obtain the same treatment for such employees in exempt industries as existed in non-exempt industries. But just as the earlier Acts did not apply to daily or hourly wage-earners, so § 3 has no significance with reference to the problem of pay for the day of rest of the latter. If they work six days, they are paid according to the number of hours or days worked. If they rest on the seventh day, they are not paid therefor. If they work on the seventh day, they receive double pay. Under any of these alternatives, the issue never arises as to whether under § 3 salary has been deducted for their day of rest. Finally, it cannot be contended that the prohibition in § 3 against deduction of salary earned can be read as an affirmative provision for payment of salary not earned; i.e., salary for a seventh day not worked. If anything, § 3 on its face provides the contrary: you are paid what you earned, and no deduction is allowed therefrom.

While it is not conclusive, it is significant that so far as we are aware no minimum wage decree, including Decree No. 12 which covers the plaintiff,[1] has provided for a day of rest with pay. The Minimum Wage Board is expert on these matters. It has been alert to protect the legitimate interests of employees. Its decrees contain many provisions to which employees are entitled by general laws. In failing to provide in any decree for a day of rest with pay, it has undoubtedly concluded that Act No. 289 does not compel this result.

We are aware of the argument that a day of rest without pay, particularly for hourly or daily wage-earners, is illusory. But the same argument could be made on behalf of the large number of employees in regular industries who rest on Sunday without pay therefor. The answer in both cases must be that the Legislature has limited the work-day and the work-week and has provided for double pay for work

---

[1] See *American Railroad Company* v. *Minimum Wage Board*, 68 P.R.R. 736.

in excess thereof. Act No. 379 of 1948, (Sess. Laws p. 1264). And the Minimum Wage Board has by various decrees established maximum hours and minimum wages, which presumably in its judgment enable employees to live for seven days on six days' pay. Finally, the parties are at liberty to negotiate on this point by collective bargaining. But it is not for this Court to override the Legislature, the Board and the collective bargaining agreement of the parties by inserting into Act No. 289 a provision for a day of rest with pay when no such provision appears in the Act, Minimum Wage Decree No. 12 or the collective bargaining agreement of the parties.

Premium or overtime pay for work on the day of rest is a familiar provision. But we know of no statute or decree providing for pay when the day of rest is actually taken. In a situation where the Legislature has wanted to provide for pay without work, it has done so specifically. See Act No. 3, Laws of Puerto Rico, 1942, as amended by Act No. 398 of 1947, (Sess. Laws, p. 766) in connection with pregnant working women. Act No. 289 contains no such specific provision.

Another factor which persuades us that Act No. 289 provided for a day of rest without pay is that the Legislature laid down no standards for determination of the amount to be paid for the day of rest to hourly employees who worked irregularly. As our original opinion discloses, to hold that the day of rest was granted with pay would require us to devise various formulae under which such employees would be paid for a day of rest. We would not hesitate to spell out these standards if the Legislature had clearly and specifically provided that such employees shall receive a day of rest with pay. See *Bay Ridge Operating Co., Inc.* v. *Aaron, et al.,* 334 U. S. 446, where the formula for regular rate of pay under the Fair Labor Standards Act was developed by the Supreme Court of the United States despite the fact that (p. 13, slip opinion) "The statute contains no definition of re-

gular rate of pay and no rules for its determination." But we cannot agree that we should first write the provision "with pay" into the statute and then devise detailed standards which are likewise not in the Act. Having concluded that the statute does not provide for a day of rest with pay, we leave Act No. 289 as we find it.[2]

We agree with the plaintiff-appellant that the district court committed the first error in holding that under Act No. 289 the employees of the plaintiff are entitled to a day of rest with pay.[3]

 The appellant assigns as the second error the alleged holding of the district court that employees in its machine shop are entitled to pay for a day of rest without working. The lower court did not make any specific ruling on this point; but we assume that its general ruling covered this question.

We have already decided in Part I that even if Act No. 289 applies to an employee, he is entitled to a day of rest,

[2] We deliberately avoid characterizing the contrary result as "judicial legislation". Those who use that phrase are indulging in name-calling rather than making an argument. See *Pérez* v. *District Court, ante,* p. 4, footnote 5. The plaintiff objects to reading "with pay" into § 1 of Act No. 289, and calls that process "judicial legislation". But in the next breath the plaintiff strenuously, and correctly, contends that "consecutive" should be read into § 1. See Part III. There the label becomes "judicial interpretation" rather than "judicial legislation". The label would therefore seem to depend on which result you prefer. We see no point in accepting either label. We confine ourselves to the difficult task of endeavouring to determine what the Legislature meant.

[3] In the sixth error the company argues that Act No. 289 is applicable only to employees with a fixed salary and not to workers whose earnings fluctuate according to the number of hours worked. The company relies on § 3 which provides that no employer shall deduct any sum from any *salary* of any employee for the day of rest. In addition to the reasons already given in the discussion of the first error for rejecting this argument, the specific terms of § 5 giving a day of rest with pay to employees who work "for a salary, wage or any other compensation" refute this contention. However, as we have seen in the discussion of the first error, such employees receive a day of rest without pay. But if the employee works instead of resting on his day of rest, as the district court correctly points out, under § 4 he receives double, but not triple, pay at the rate for regular working hours.

but not with pay. The lower court therefore erred in holding that machine shop employees are entitled to pay for their day of rest. But the question still remains as to whether the Act as such applies to them.

According to the allegations of the complaint, which were admitted by the defendants, Rafael García and Félix Miranda worked in the machine shop of the company, not in its transportation service; they had not worked on Sundays prior to or since April 9, 1946, the effective day of Act No. 289; if they worked on Sundays, they received double pay; and the company entered into a collective bargaining agreement with its employees on January 1, 1946 for the calendar year 1946.

We cannot agree with the appellant that Act No. 289 does not apply to García and Miranda because they work in the machine shop rather than in the transportation operations of this public utility. The Act on its face applies to all employees of public utilities, not simply to those who perform functions which must go on seven days a week. Perhaps the Legislature could have devised a formula whereby Act No. 289 was restricted to the latter type of employees, and could have provided that employees of public utilities whose services are not needed on Sundays shall be given a day of rest on Sundays pursuant to § 553 of the Penal Code. But the Legislature chose to make Act No. 289 applicable without qualification to all employees of public utilities.

Once the question of applicability is settled, it is difficult to see why any problem exists as to these employees. Exhibit I, attached to the complaint and made a part thereof, shows the hours the defendant employees worked, the days on which they worked, and their hourly rates of pay. The Exhibit also indicates that prior to passage of Act No. 289 the workweek of these employees began, for bookkeeping purposes, on Thursdays. But if the company can show that García and Miranda worked six days a week and did not work on Sundays, its fears that it will be required to give these employees two days of rest—Sunday, their regular day, and another

day, counting from Thursday to the seventh day—are groundless. Looking at the picture as a whole rather than fixing on the effective date of the Act, we see that these two employees worked six days out of seven, since they had every Sunday off. Under the Act they would receive double pay if they were required to work on Sunday, their regular day of rest, due to some emergency.

There is some discussion in the brief of the company in connection with this error of the collective bargaining agreement. If the Legislature has conferred on the defendant employees any rights by virtue of a valid law, no collective bargaining agreement, whether executed prior or subsequent to enactment of the statute, may operate to impair these rights. In any event, we cannot pass on the effect of the collective bargaining agreement on this point because it is not properly before us.

This is a suit for a declaratory judgment which was decided on a motion of the plaintiff for a summary judgment after the defendants had filed their answer. Consequently, no testimony was taken. The only allegation in the complaint with reference to the collective bargaining agreement is that it fixed the hourly salaries as found in Exhibit I. That Exhibit does not show García working on a Sunday. Miranda appears as working five Sundays between January 1 and June 19, 1946. On four of them he worked nine hours; on one he worked ten hours. His hourly wage appears as $.528, without any indication as to whether he was to receive $.528 per hour or double this wage for working on Sunday, his regular day of rest. The pleadings and Exhibit I therefore do not disclose the terms of the collective bargaining agreement with regard to pay for Sunday work done by shop employees like García and Miranda. And the collective bargaining agreement itself is not in the record. Consequently, we do not have before us anything on which we could base a decision as to what effect, if any, the collective bargaining

180

agreement had on this case insofar as García and Miranda are concerned.

The net effect is that, without reference to the collective bargaining agreement, if shop employees of the company like García and Miranda work from Monday through Saturday, they are entitled to rest on Sunday and to receive six days' pay. If they work on Sunday, their regular day of rest, they are entitled to pay at double the regular rate therefor. The second error was therefore committed in part: the lower court did not err in holding that Act No. 289 applies to machine shop employees of the company; but it did err in holding that they were entitled to a day of rest with pay.

### III

The third and fourth errors are similar. Both are concerned with the ruling of the district court that the six days of work which entitled a workman to a day of rest with pay need not be consecutive.

The company argues that the purpose of Act No. 289 is to give the employee a day of rest to enable him to replenish his physical vigor, following the divine plan of working six days and resting on the seventh; that, although the statute does not specifically use the phrase "consecutive days", in the light of its purpose, it must necessarily presuppose six consecutive days of work, followed by a day of rest; that the humane purpose of the statute would not be served by granting a day of rest to a person who accumulated six days of work by working one day a week, or one day a year; and that the Minimum Wage Board has recognized the validity of this argument by providing in Decree No. 12, which covers transportation service, that every employee will have a right to a day of rest after working six consecutive days.

In their brief on these errors the appellees, who are represented by attorneys from the Department of Labor, make a number of concessions which support the position of the appellant. They concede (1) that it is not unreasonable to

argue that the days worked must be consecutive, despite the fact that Act No. 289 does not specifically so provide; (2) that the legislative history of Act No. 289 appears to indicate this result; (3) that the argument in favor of this view is reinforced by the relation between Act No. 289 and § 553 of the Penal Code; (4) that as a practical matter under § 553 employees generally although not necessarily work six consecutive days before resting on Sunday; and (5) that the evident purpose of Act No. 289 to protect the health of employees necessarily requires by implication that the six days worked be consecutive.

If the appellees had made no further argument on this point, we would decide it without further ado in favor of the appellant, based on the concessions of the appellees. But the appellees then proceed to argue that the contrary conclusion is not devoid of support. They contend that the failure of § 1 of the Act to provide specifically that an employee shall work six consecutive days in order to be entitled to a day of rest acquires significance in the light of § 2 which provides that the Act shall not apply to occasional work. We are unable to follow this argument. Whether an employee who has worked six days of a particular week is only an occasional employee depends on the facts of his particular case. But we fail to see how determination of that problem aids in the task of discovering whether under Act No. 289 read as a whole the six days' work of employees who are not occasional must be consecutive in order for them to earn a day of rest.

The appellees then contend that Act No. 289 is designed not only to protect the health and increase the productivity of the employee by giving him a day of rest, but also to combat unemployment. But even if we agree that a secondary purpose of Act No. 289 is to spread employment, we cannot say this in itself is enough to show that the six days' work were not intended to be consecutive.

The appellees conclude their argument of this point by asserting that an interpretation of the law which would put·

into practice the closest possible halfway point between the six consecutive days of work of which the Act does not speak in § 1 and the occasional work which it expressly excludes in § 2, would give due effect to the legislative purpose.

The appellees correctly concede that (1) the legislative history of Act No. 289, (2) its relation to § 553 of the Penal Code and (3) the principal purposes of the Act—protecting employees' health and increasing their productive capacity by rest—lead us to the requirement of six consecutive days of work rather than to the result reached by the district court under which six days worked, however intermittent, entitles an employee to a day of rest with pay. And we find it significant that Decree No. 12 of the Minimum Wage Board, covering transportation service, provides that every permanent employee shall have the right to a day of rest for each six consecutive days of work.

If it were possible to achieve some happy mean, as suggested by the appellees, we might be disposed to follow this course. Our difficulty is that no definite solution in this respect has been suggested to us and we have been unable to devise one.

Above all, a statute regulating employer-employee relationships should achieve reasonable certainty. Under the formula of the district court, or even under some middle position, neither employer nor employee would ever know what constituted the work-week and what day was the day of rest. When the continuity of work was broken, the remaining days worked would, for purposes of calculating the six days' work, spill over into the next work-week, with possibly disastrous results for both parties. To avoid double pay under § 4, the employer would be forced to grant, and the employee would be forced to take, a day of rest in the middle of the succeeding normal work-week. Such a chaotic result should be reached only if it is compelled by the statute.

On the other hand, if Act No. 289 is construed to mean that seven days are treated as a work-week, separately and

as a unit for each employee, the parties will understand their respective rights and duties at the end of each seven-day period and the primary purpose of the statute—a day of rest in every seven days—will be achieved. To chop off every seven days in this way and to determine the respective rights and liabilities of employees and employers at that point, is similar to the method of annual calculation of income for tax purposes despite the fact that frequently income is not earned on an automatically annual basis. See *Roig* v. *Tax Court*, 65 P.R.R. 418.

Taking every seven days as the unit of measurement, it is obvious that, beginning with the first day after the employee receives his regular day of rest, he must work six consecutive days in order to be entitled to rest on the seventh day. And failure to work some day in the middle of the week does not, for purposes of receiving a day of rest without pay, begin a new period of six consecutive days of work. To so hold would be to precipitate the very chaos that our ruling herein seeks to avoid, with the employee forced to rest on a day on which both employer and employee desired him to work. There must be some fixed, regular day of rest; and the six consecutive days of work are counted beginning the day after that date, no matter what other days of work during the work-week have been missed for reasons unrelated to the requirement of a day of rest.

The only substantial difference in the problems raised by the 3rd and 4th errors is that the 3rd error concerns the two shop employees exclusively. In arguing this error, the company makes the argument we have already discussed above. After Act No. 289 went into effect on April 9, 1946, apparently some of the shop employees worked from April 9 through April 13, and then rested on Sunday, April 14, without having worked six consecutive days; they then worked from April 15–20, six consecutive days, and again rested on Sunday, April 21. As we have already indicated, this does not mean, as the company seems to fear, that the days

worked count from April 9, and that in addition to Sunday these employees were entitled to a second day of rest after six intermittent days of work. In addition to the necessity of continuity, the work-week, as we have already indicated, is calculated not as beginning on the effective day of the Act, but on the days after the regular day of rest from the previous six days' work.

Our conclusion is that the district court committed the third and fourth errors in holding that the six days worked need not be consecutive. We hold that, taking the regular work-week of each employee as a separate unit, he must work on six consecutive days to be entitled to the seventh day of rest.

IV

The fifth error is directed against the ruling of the lower court that the six days of work must be computed on the basis of an eight-hour day, but that "a workman who works four hours in one day, must work on another day or days sufficient time to complete the eight hours in order for it to be considered that he has worked one of the six days required by law."

If we had adhered to our opinion that under Act No. 289 the day of rest was granted with pay, it would be imperative for us to determine, as we did in Part IV of our original opinion, what constitutes a work-day in order to calculate the pay for the day of rest. This would be a difficult task, as Part IV of our original opinion demonstrates, since the Act does not define a work-day. But this error has lost a great deal of its importance by virtue of our ruling in Part I herein that the day of rest is taken without pay.

However, this error still remains in the case for the purpose of determining whether work for less than the number of hours in the regular work-day during any of the six consecutive days worked deprives an employee of his right to a day of rest. The significance of this point is that if an employee in an exempted industry is not entitled to his regu-

lar day of rest, he is not entitled to double pay if he works instead of resting on that day.

The district court held that the employee must work the equivalent of six eight-hour days in order to be entitled to a day of rest, and that if less than eight hours a day is worked, the time worked is added together until forty-eight hours are worked, at which time the employee becomes entitled to a day of rest.

We cannot agree with this interpretation of the statute. It would bring about the same chaotic conditions discussed in Part III: the parties would be required to treat as a day of rest a mid-week day on which both wanted to work. But it does not necessarily follow that eight hours must be worked on six consecutive days. It cannot be denied that if § 1 of Act No. 289 is read literally, there is considerable room for the contention that it means six full days of work rather than work on six days. But we are not obliged to read § 1 literally if that would result in frustrating the intention of the Legislature. See Part III, where we read six days of work as meaning six consecutive days of work; *Pérez* v. *District Court, supra*, Part II. We think the Legislature meant to provide that, treating every seven days as a separate unit, if an employee works any period of time, no matter how short, on each of six consecutive days, he is entitled to rest on the seventh day without pay; and if he works on such a seventh day, he receives double pay. It is not too much to expect an employer who requires his regular, not occasional, employees to work on seven consecutive days to pay at double the regular rate for the seventh day. On the other hand, relieving employers of this requirement on the basis that on one of the six days a regular employee worked one hour less than eight hours, would virtually leave the day of rest for regular employees at the option of the employer.

Our conclusion on the fifth assignment is that the lower court erred in holding that, for purposes of earning the day of rest, the work-day is eight hours. It also erred in hold-

ing that the time worked each day is added together, with a day of rest after forty-eight hours are worked. Instead we hold that, treating every seven days as a unit, beginning with the day after the regular day of rest, an employee is entitled to a day of rest without pay if he works any part of each of six consecutive days.

## V

■ The district court did not pass on the question raised by the seventh assignment. Some of the employees of the company work nine hours, and are paid at double the regular rate for the ninth hour. *Cardona* v. *District Court*, 62 P.R.R. 59. Assuming that it was required to grant a day of rest with pay, the company asked us for a ruling that Act No. 289 does not support the contention of these employees that the pay for the day of rest consists of eight hours at ordinary rate and a ninth hour at double pay.

In Part V of our original opinion we agreed with the contention of the company that pay for the day of rest does not include any pay for hours worked beyond eight hours. However, this assignment has become academic in view of our holding in Part I that the day of rest is without pay.

## VI

■ The 8th, 9th, 10th, 11th and 12th errors have likewise become academic. The Company in those errors attacked Act No. 289 as unconstitutional, if it were interpreted to grant a day of rest with pay. But it concedes that if the Act provides a day of rest without pay, it is valid. *People* v. *C. Klink Packing Co.*, 108 N.E. 278 (N.Y., 1915); *The People* v. *García & García*, 22 P.R.R. 759.

## VII

■ The thirteenth assignment is that the district court erred in holding that Act No. 289 does not violate § 34 of the Organic Act, 48 U.S.C. § 832, that "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title;

but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

Act No. 289 is entitled "An Act to fix one day of rest for each six (6) working days in behalf of the employees of commercial and industrial establishments, enterprises, and lucrative businesses not subject to the provisions of § 553 of the Penal Code, as subsequently amended, relative to the closing to the public; to provide that all hours worked during such day of rest shall be paid for at a rate double the salary rate agreed upon for regular working hours, and for other purposes."

The company argues that the purpose of Act No. 289 is to provide for a day of rest for employees who work in businesses excepted from § 553 of the Penal Code; that this subject is clearly expressed in the title; but that the statute also improperly includes a different subject, likewise expressed in the title, namely, double pay for employees who work on their day of rest.

This is a frivolous contention. The provisions for a day of rest and for double pay if work is performed thereon are intimately related. Both are concerned with the same subject: assurance of a day of rest normally, with the safeguard that if work is required on that day because of some emergency, the employee shall receive double pay therefor. See *Compañía Popular* v. *District Court*, 63 P.R.R. 116, 126. To agree with this contention would be in effect to hold that every Section of a bill of this nature must be embodied in a separate bill.

The company also argues that the provision contained in § 3 that "No employer shall deduct any sum from the salary of any employee for the day of rest established by this Act" is not included in the title of the Act. We reject this argument for the reasons given in *Rivera* v. *District Court*, 62 P.R.R. 491, 515–16; *Sunland Biscuit Co.* v. *Minimum Wage*

*Board of Puerto Rico*, 68 P.R.R. 345; and *Government of the Capital* v. *Executive Council*, 63 P.R.R. 417, 442–445.

We find that Act No. 289 conforms to the requirements laid down by § 34 of the Organic Act for titles of bill enacted by our Legislature.

## VIII

We should normally exercise our discretion to render a declaratory judgment only if the judgment will put an end to the controversy between the parties. Anderson, Declaratory Judgments, § 63, pp. 175–77; Borchard, Declaratory Judgments, 2d ed., pp. 35, 56; cf. *Government of the Capital* v. *Executive Council, supra*, p. 450. But this case was decided by a summary judgment based on the complaint and answer. And we shall modify the judgment in some respects. While we hope our rulings herein are reasonably clear, we are aware that generalities do not decide concrete cases. The rights of each of the eight defendant employees and others similarly situated depend on the impact of our rulings on the facts of each employee's case. It may therefore not end this controversy for us simply to affirm the judgment as modified. Consequently, we believe it more appropriate to modify the judgment and to remand the case to the district court where the parties will have the opportunity, if they care to exercise it, to amend their pleadings or to adduce testimony, or both, in order to obtain adjudication of the rights of particular employees under the specific facts affecting each of them, in the light of our opinion and judgment.

Our opinion and judgment of May 4, 1948 are withdrawn. Instead, for the reasons stated herein, a new judgment will be entered modifying the judgment of the district court to provide that (I) under Act No. 289 employees of the plaintiff who work for hourly and daily wages are entitled to a day of rest without pay; (II) shop employees of the plaintiff who work from Monday through Saturday are entitled to rest on Sunday without pay; (III) the regular work-week of each employee of the plaintiff

is taken as a separate unit, and he must work six consecutive days to be entitled under Act No. 289 to the seventh day of rest without pay; (IV) treating every seven days as a unit, beginning with the day after the regular day of rest, an employee of the plaintiff is entitled to a day of rest without pay if he works any part of each of six consecutive days; (V) in view of our holding that the day of rest is without pay, the contention of the plaintiff that pay for the day of rest does not include any pay for hours worked beyond eight hours has become academic; (VI) Act No. 289, interpreted as granting a day of rest without pay, is not unconstitutional; (VII) Act No. 289 conforms to the requirements laid down by § 34 of the Organic Act for titles of bills enacted by our Legislature; and the case will be remanded to the district court for further proceedings not inconsistent with this opinion.[4]

---

[4] We pointed out in footnote 3 that, as the district court correctly held, if an employee works instead of resting on his day of rest, he receives double, but not triple, pay at the rate for regular working hours. We have not included this provision in our judgment as there does not seem to be any dispute between the parties on this point. The defendants have apparently acquiesced in this portion of the judgment of the district court.